# CHARLESTON.

## THE TOWN OF HARRISVILLE *v.* IMPERIAL OIL & GAS PRODUCTS COMPANY.

## Submitted March 27, 1924.    Decided April 29, 1924.

1. GAS—*Town Held Not Entitled to Cancellation of Transfer of Gas Plant and Assignment of Franchise by Corporation to Which Town Transferred Gas Plant.*

    Where a town owning and operating a gas plant for the supplying of gas to itself and its inhabitants for a consideration transfers the plant to a large gas-producing corporation, and further grants to such corporation, its successors and assigns, the franchise, right and privilege of constructing and operating a system of mains, pipes, and other appliances in and upon the streets and alleys of the town for distributing and furnishing gas to it and its inhabitants for a term of years, and after serving the town and its inhabitants under the franchise rights for two years the corporation transfers and assigns the franchise and gas plant to a subsidiary corporation, whose stock is owned by the stockholders of the former company in proportion to their holdings in the parent corporation, the transfer and assignment will not be cancelled at the instance of the town on the ground that it creates a more favorable condition for increase of rates and renders uncertain an adequate supply of gas to the town and its inhabitants during the term of the franchise. (p. 317).

2. SAME—*Transfer of Gas Plant and Assignment of Franchise to Subsidiary Corporation Held Not to Relieve Transferor of Obligations Under Franchise.*

    The assignment and transfer by the parent producing company, being in substance a grant to itself, will not relieve this corporation of its obligation to supply gas    under    the

franchise nor affect the jurisdiction of the public service commission to investigate its affairs for the purpose of establishing proper rates. (p. 318).

McGINNIS, JUDGE, absent.

Appeal from Circuit Court, Wetzel County.

Action by the Town of Harrisville against the Imperial Oil & Gas Products Company. Decree for plaintiff, and defendant appeals.

*Reversed, and bill dismissed.*

*Adams & Cooper,* for appellant.

*S. A. Powell, S. O. Prunty* and *Robert Morris,* for appellee.

LITZ, JUDGE:

On November 16, 1918, the plaintiff sold and transferred to the defendant, Imperial Oil & Gas Products Company, a corporation, a gas plant owned and operated by the town in supplying gas to itself and its inhabitants; and further granted to the said defendant, its successors and assigns, the franchise, right and privilege of constructing and operating a system of mains, pipes and other appliances in and upon the streets and alleys of the town for distributing and furnishing gas to it and its inhabitants for the term of ten years. The said Imperial Oil & Gas Products Company, hereinafter called Imperial Company, immediately took possession of the plant and thereafter continuously furnished gas to the town and its inhabitants at the initial rates provided in the franchise until November, 1920, when it applied to the public service commission for an increase of rates. The application was resisted, and the protestants, the town and its inhabitants, for the purpose of showing the fairness of the existing rates, demanded an audit of the applicant's books and records by a representative of the commission. The audit having been directed on December 7, 1920, the applicant thereafter, on December 23, 1920, withdrew its application. The Imperial Company, through its stockholders and officers, then organized the defendant Utility Gas Company, a corporation, and by

written agreement of January 31, 1921, undertook to sell
and transfer to the Utility Gas Company, hereinafter called
Utility Company, all of the natural gas franchises, business,
contracts, property and rights then owned, held and conducted
by the Imperial Company as a public service corporation, in
Ritchie and Doddridge counties, including the franchise held
by it from the town of Harrisville, in consideration of the
stock of the Utility Company and its assumption of all the
obligations of and pertaining to the public service business
of the Imperial Company; this stock being distributed to the
stockholders of the Imperial Company in proportion to their
holdings in the parent corporation. The Imperial Company
by the agreement undertook also to sell and deliver to the
Utility Company at points of distribution and consumption,
gas to supply the consumers of the Utility Company until
April 1, 1922, at twenty cents per thousand cubic feet.

On February 1, 1921, the Utility Company made applica-
tion to the public service commission for increase of rates.
On March 8, 1921, the time fixed for the hearing of the appli-
cation, the town on behalf of itself and its inhabitants again
filed protest. A partial hearing was then had and further
hearing continued for the reports of the commission's engi-
neers and statisticians, which reports were afterwards made
and filed. A number of delays having occurred, the final
hearing was set for August 4, 1921.

On the first day of August, 1921, the plaintiff presented
to the judge of the second judicial circuit its bill in this cause,
praying cancellation of the transfer and assignment by the
Imperial Company of the franchise and gas plant to the
Utility Company; and an injunction restraining the Utility
Company from further prosecuting its application, and com-
pelling the Imperial Company to perform its obligations under
the franchise. A temporary injunction was thereupon award-
ed by the said judge, enjoining the further prosecution of
the application by the Utility Company until otherwise or-
dered. A decree was entered at the final hearing, October
18, 1921, granting full relief. From that decree the defend-
ants appealed.

The case presents a large record and voluminous briefs of

counsel devoted to the question of the Imperial Company's right to assign the franchise; the defendants affirming and plaintiffs denying the right. Plaintiff insists that the assignment and transfer of the franchise to the Utility Company renders uncertain an adequate supply of gas to the town and its inhabitants during the term of the franchise, and will bring about also an unfair increase of rates, upon the theory that the Imperial Company is thereby relieved of its franchise obligations and released from the jurisdiction of the public service commission. The proposition otherwise stated is that, while the transfer and assignment remains uncancelled the commission can not look beyond its form to the fact that the Imperial Company in reality still retains the franchise and; in equity and good conscience, should be required to perform the obligations assumed thereunder.

The assignment by the Imperial Company to its creature, the Utility Company, was in substance a transfer to itself. The final analysis of defendants' position means nothing more. They call attention with apparent approval to the case of *Jamaica Gas Light Co.* v. *Nixon*, 181 N. Y. Sup. Ct. 623, and other authorities, affirming the power of courts and public service commissions, in determining the reasonableness of rates, to go back of the distributing company to the extent of treating the producing and distributing companies as one concern, when the two, as in this case, are owned and controlled by the same persons; thus ignoring not only the rate fixed between them, but the very existence of the distributing company as a separate entity.

In the *Jamaica Gas Light Company* case the plaintiff, a gas distributing company, set up a basis for increase of rates the price it was paying for gas to the producing parent company. The fairness of such agreement was required to be established by the most convincing proof, the court saying:

> "The allegation that the plaintiff (distributing) company and the Brooklyn Union Gas Company (the producing parent company) had agreed upon $.65 per thousand for gas for the year 1919, as against $.50 for 1918, is not sufficient to establish as a fact that such a sum is a fair price; and *where the agreement is in effect made with oneself*, it is open to the suspicion that it is

not fair to the consumer by reason of the self-interests of the *so-called* contracting parties. It is incumbent upon the plaintiff to establish the fairness of such an agreement by the most convincing proof. *To determine whether it is fair, it is essential to present evidence of the fair valuation of the Brooklyn Union Gas Company's capital, of the expenses necessarily and economically incurred in the manufacture of gas, and of the costs of the commercial administration of its business.''*

Where by the process of incorporation the ownership of a property is nominally divided between two or more corporations, but is in fact the same, and the business of such corporations is but a single enterprise, the dedication of the property of a nominal owner thereof to the public service is attributable to the real owner and is a dedication of the entire property involved in the common enterprise. *Ohio Mining Co.* v. *Public Utilities Comm.* (Ohio), 140 N. E. 143.

In that case the plaintiffs, coal mining companies and patrons of The Athens Electric Company and The Hocking Power Company, public service corporations, engaged in selling electricity, filed a complaint before the public utilities commission against The Hocking Power Company, The Athens Electric Company, and The Southern Ohio Power Company for a reduction of rates. The Southern Ohio Power Company, owning the stock and controlling the management of The Athens Electric Company and The Hocking Power Company, produced the electricity sold by them. The rates charged by the distributing companies being based upon the price fixed between them and the producing company for electrical energy, the consumers contended that as the producing company owned and controlled the distributing companies it was in reality a public utility and therefore subject to investigation for the purpose of determining the fairness of the price for electricity fixed between it and the distributing companies. The court in deciding that the producing company, through its commonly owned associated corporations, The Athens Electric Company and The Hocking Power Company, was a public utility subject to the jurisdiction of the public utilities commission, said:

"The situation, then, of the three corporations is that

the property of each is owned in fact by the stockholders of the Southern Ohio Power Company; that the earnings and losses of each company inure to or fall upon the same persons; that the separate ownership of the producing company at Floodwood and the distributing companies at Athens and Nelsonville is but a fiction, and there is in fact a single ownership of all. The formal contracts of 1915, 1918, and 1920 between the producing company and the distributing companies necessarily were not made for the purpose of defining the rights between and fixing the obligations of the producing company and the distributing companies, but were made for 'public consumption'. The three corporations necessarily can have no separate or adverse interests, can have no controversies with each other, and no antagonistic contractual relations, any more than an individual may have such relations with himself. The separate organizations are but fictions, and exist apparently for the sole purpose of defeating the operation of the law.  *  *  *

"Applying the doctrine thus enunciated by this court and several of its distinguished members, the ownership in the property of these three corporations is in fact in the stockholders of the Southern Ohio Power Company, and, whatever the purpose, the effect is to withhold by a fiction one of these properties from the operation of the law as to public utilities, which but for the separate organization would be subject thereto. The facts disclose that the division of this whole property into three separate parts is a division by denomination only; that, while the ownership of the three plants is designated by such owners as separate, ownership is in fact the same; that the owners seek by resort to the fiction of corporate ownership to limit the effect of the dedication of the properties of their distributing companies to those companies alone; that, by reason of the fact that the whole is but one commonly owned property engaged in a single enterprise, the act of one nominal division thereof is attributable to all; and that the Southern Ohio Power Company, through its commonly owned associated corporations, The Athens Electric Company and The Hocking Power Company, is engaged in the selling of electric energy to consumers within the provisions of sections 614-2 and 614-2a, General Code, and is a public utility subject to the jurisdiction of the Public Utilities Commission of Ohio.''

The situation here is clearer than that presented in either

the *Jamaica Gas Light Company* or the *Ohio Mining Company* cases. In those cases the producing companies were declared public utilities by reason of having acquired the stock of the distributing companies. In this case the Imperial Company was at the time of, and for several years prior to, the assignment engaged in public service business for the marketing of about three per cent. of its entire gas product, or one-sixth of the gas produced by it in West Virginia.

In the recent case of *United Fuel Gas Co.* v. *Public Service Commission,* 94 W. Va. 415, 120 S. E. 398, the plaintiff, a large gas producing and distributing company, on its application before the public service commission for an increase of rates relied upon the validity of contracts between itself and commonly owned associated companies for the sale of gasoline rights and wholesale gas. Applying the principle under consideration it was held:

> "Where, in a rate case, it is shown that a natural gas utility company has caused a corporation to be formed, and has transferred to it, with other property, the exclusive right to use all its natural gas for the purpose of extracting gasoline therefrom, and receives therefor all the capital stock of the new corporation, and is to receive as royalty one-eighth of the gross proceeds of the gasoline as it is produced and sold, and it appears that half the net proceeds therefrom annually amount approximately to three times the eighth of the gross proceeds, such a sale, so far as the gas-consuming public is concerned, is unfair; it is a sale made by the company, with the company, and for the benefit of the company, and should be ignored in determining the proportion of the income from gasoline which should be charged to the utility.
>
> "A natural gas utility should not be allowed to sell its gas to its parent companies at less than its fair market value, and where it does so, in a proceeding to determine gas rates for the utility, it should be treated as receiving a fair market rate for the gas delivered to the parent companies."

In view of the fact that the plaintiff is not prejudiced by the purported assignment, the commission having the power, notwithstanding its execution, to investigate the affairs of the Imperial Company in establishing fair and just rates, we are

of opinion to reverse the circuit court, dissolve the injunction and dismiss the bill.

The Imperial Company's organization of, and assignment to, the Utility Company created in effect a department for the parent company's public service business. This was permissible as a matter of policy or convenience . As stated by counsel for defendants, what difference can it make to the consumer whether he pays all the profit to the Imperial Company (in name), or pays a fair return to it upon the capital employed in producing the gas and transmitting it to the plants and a fair return to the Utility Company (its agency) upon the capital employed in distributing it? The same management controls both companies. No officers salaries are charged against the Utility Company. The superintendence and labor remain the same. The books of the two companies are kept in the same office by the same office force.

*Reversed and bill dismissed.*