# CHARLESTON.

STATE *ex rel.* DEACON M. JONES *v.* FLORENCE M. KUHN.

Submitted September 5, 1923.   Decided September 11, 1923.

1. JUDGEMENT—*Bill and Other Pleadings May Be Inspected to Determine Meaning and Effect of Decree.*

   If any doubt arises as to the meaning and effect of a decree, the bill and other pleadings may be inspected in order to solve it.   (p. 420).

2. MANDAMUS—*When Writ Lies to Compel Public Officer to Perform Public Duty, Stated.*

   Mandamus will not issue to compel the performance of a public duty by a public officer unless it is clearly shown that the relator has an indisputable right to enforce the performance demanded, and there is a corresponding duty on the part of the public officer to perform it.   (p. 422).

3. SAME—*Will not Issue to Compel Performance of Act Where Enjoined.*

   Mandamus will not issue where the effect thereof will compel the performance of an act which has been enjoined by a court of competent jurisdiction which has first obtained jurisdiction of the parties and subject matter.   (p. 422).

4. SAME—*Mandamus to Compel Countersigning of Draft for School Apparatus Refused Where Injunction Pending Against Payment Thereof.*

   Where mandamus is sought to compel respondent, as county superintendent of free schools and ex officio county financial secretary, to countersign a draft or order for school apparatus,

issued by a board of education, as provided in section 13, chapter 45, Code, 1918, and it is shown by the return and exhibits therewith that an injunction granted by a court of competent jurisdiction is in full force and effect at the instance of a tax payer in a suit to enjoin payment for the apparatus so purchased by the board, on the ground of illegality and fraud, and that relator and his principal (the assignor of the school draft in question) were parties to the suit and set up the issuance of the school draft in payment of the purchase; and that the financial secretary at the time of the issuance of the draft, and during his term of office, did not give his consent in writing or otherwise to the purchase of the apparatus in payment of which the draft was issued; and that the payee of the draft had instituted mandamus proceedings in another court to compel him to countersign it, which was resisted by him and is yet pending, having been stayed by an order of the court which states that the matter in controversy can be adjudicated in the injunction suit; a clear and indisputable legal right has not been shown to require respondent to countersign the draft, and the peremptory writ will be refused. (p. 422).

Action by the State on the relation of Deacon M. Jones against Florence M. Kuhn, to compel respondent, as County Superintendent of Free Schools of Kanawha county and ex-officio county financial secretary, to countersign a warrant issued to petitioner by the board of educatin.

*Writ refused.*

*W. C. Reddy* and *M. F. Stiles,* for petitioner.

*B. K. Littlepage, Frank C. Burdett* and *D. L. Salisbury,* for respondent.

LIVELY, JUDGE:

Relator, by his petition, seeks a peremptory writ of mandamus to compel respondent, Florence M. Kuhn, county superintendent of free schools of Kanawha county, and ex-officio county financial secretary, to countersign a warrant issued on the 7th day of April, 1917, by the board of education of Cabin Creek district of said county, on the sheriff of that county, for the sum of $1875.00, made payable to the order of R. O. Evans and endorsed by him. Said school order is designated as Series C No. 671. The petition avers that the

school order was for the purpose of paying R. O. Evans for fifty copies of a practical agricultural series at $37.50 each for the use of the schools of that district, purchased by the board after mature consideration and judgment and upon the recommendation of the then county superintendent of free schools, as required by law; that the articles for which the school order was issued were duly received by the board but that the then county superintendent of free schools failed and refused to endorse the order during the entire term of his office; that his term of office expired on the first day of July, 1923, when respondent was inducted into office as his successor; and that she has likewise refused to countersign the said school order. It is averred that she has no just cause or reason for not countersigning the warrant and that unless the same is signed by her relator cannot receive payment of the draft and has no other remedy.

The return to the alternative writ avers that the legality of the school order is the subject of a chancery proceeding pending in the circuit court of Kanawha county in which an injunction has been awarded and is now in full force which in effect prohibits the collection or payment of the school draft in question, which suit was instituted by P. L. Brannen on the 24th day of May, 1917, in which George W. Jenkins, Jr., the former county superintendent of free schools, was impleaded; that relator was a party to said chancery suit and filed an answer therein. The pleadings and record of the injunction suit are exhibited with the return together with a certificate of the clerk of the circuit court that the cause is yet pending. The return also avers that on May 25, 1918, R. O. Evans, the payee of the school order in controversy, instituted, in the common pleas court of Kanawha county a proceeding in mandamus against George W. Jenkins, Jr., the then county financial secretary, for the purpose of requiring him to countersign and approve the said school draft; that Jenkins resisted the issuance of the mandamus; that by agreement and consent of counsel therein the mandamus proceeding was transferred to the circuit court where, upon the filing of the return of Jenkins (the financial secretary), and the inspection of the petition and return, the court, on the 15th day of September, 1922, found that the matters therein aris-

ing could be properly adjudicated in said chancery cause of Brannen against the board of education of Cabin Creek district and others, therein pending, and by order duly entered as of that date, stayed further proceedings until the parties thereto could litigate the matters involved therein, in the said chancery cause; and that said mandamus proceeding is yet pending, awaiting the adjudication of all matters involved in the injunction suit instituted by Brannen. The orders entered by the court in the mandamus proceeding are exhibited with the return.

The return denies that the alleged purchase of the agricultural charts for which the order in controversy was issued, was recommended or approved by Jenkins, the then county superintendent, in writing, as required by section 13 of chapter 45 of the school law in force at that time, but on the contrary that the board, before the alleged purchase, was specifically notified by Jenkins that it could not purchase any apparatus without first having his approval in writing, and the return exhibits a copy of a letter from Jenkins to that effect, supported by Jenkins' affidavit. The affidavit of Jenkins is to the effect that on January 4, 1917, he wrote a letter to each member of the board and the president thereof and to the secretary, Hudnall, directing their attention to section 13 of chapter 45 of the then school law relating to the purchase of school apparatus and insisted that the provisions of that section regarding the written approval of the county superintendent should be fully complied with; that one of the members replied to the letter and advised him that if any such purchases should be made he would be duly notified; that about two months after the alleged purchase had been made he was advised of that fact, and immediately took the matter up with the president, asking for a detailed report of the affair, and was then advised for the first time of the purchase; and he immediately wrote the president, members and secretary disapproving the purchase of the fifty agricultural charts, giving his reasons therefor; and that about six days after his letter of disapproval he wrote to the secretary of the board suggesting that if the order for the charts had not been actually placed to notify the seller of his, Jenkins' disapproval, and request that the charts be not shipped; that at no time

did the board have his written or oral approval of the pur-
chase of these charts, and that he not only disapproved the
purchase but made every reasonable effort to keep the same
from being purchased and to secure the cancellation of the
said order after it had been placed, and the matter brought to
his attention.

Upon an inspection of the bill for injunction of Brannen
against the board of education, Deacon M. Jones, R. O. Evans
and others, filed as an exhibit with the return, we find that
the legality of the purchase of the agricultural charts in ques-
tion was attacked and an injunction asked for against the
president and members of the Board, R. O. Evans and Deacon
M. Jones (the relator in this case), prohibiting them from the
issuing of any draft, warrant or other writing for the pay-
ment of the purchase; and praying that all contracts or agree-
ments entered into by and between the board relating thereto
be cancelled, set aside and annulled. An injunction was
awarded as prayed for; and it appears that this injunction,
with subsequent modification, is now in full force.

The point is raised by relator that this injunction order was
entered on May 24, 1917, and was to prevent the issuance by
the board of an order on the sheriff for the payment for the
charts; whereas, the order for $1875.00 and now in question
had already been issued on the 7th day of April, 1917, and
that the injunction awarded was not effective as against this
particular draft already issued. However, we find upon fur-
ther inspection of the record that this contention was specifi-
cally set up by relator in his amended answer filed in the in-
junction suit on July 19, 1917. That answer, among other
things, says that the board, after having made the purchase
of the practical agricultural series, ''thereafter duly issued
its warrant in payment of said practical agricultural series;
that said warrant is dated April 7, 1917, and is designated as
Series C, No. 671, and is payable to the order of the defend-
ant R. O. Evans, and is signed by John M. Bannister, presi-
dent, also signed by R. M. Hudnall, secretary; that after said
warrant was signed as aforesaid the same was delivered to
this defendant, as agent for said R. O. Evans, and said war-
rant is now in the possession of this defendant; that on the

face of said warrant it is shown that it is in payment of fifty practical agricultural series.''

Upon the coming in of this answer and the several answers and demurrers, the cause came on for hearing on the pleadings and proofs and upon a motion to dissolve the injunction, and the court thereupon ordered and decreed that the injunction be dissolved, ''except so far as the same relates to the articles described in said bill of complaint as fifty agricultural charts at $37.50 each, $1875.00, and as to which said articles said injunction is continued in force.'' We must construe the injunction in the light of the pleadings. *Walker* v. *Page,* 21 Grat. 636; *Burging* v. *McDowell,* 30 Grat. 236; *Black* v. *Crouch,* 85 W. Va. 22. We think there can be no question that the legality of the purchase of the charts and the legality of the draft and its payment was one of the subject matters of litigation in the injunction suit; and that the injunction as it now stands would prevent the collection of the order in controversy. It will be observed that the draft or order described in the amended answer of the relator to the injunction bill is the one upon which this proceeding in mandamus is predicated. The effect of the peremptory writ of mandamus, if issued in this case, would be to relieve Evans and Jones (the relator), parties to the injunction suit, from the effect of that injunction. What is the object of having the financial secretary to countersign and approve the school order in question? It is to complete its legality and make it payable by the sheriff, who was not a party to the injunction suit. The ultimate object is for payment of the draft, and this step would have the effect of running contrary to the injunction. If the collection of the purchase money for these charts is enjoined, why do a vain thing by mandamus? ''It is well settled that the extraordinary relief by mandamus will never be granted to compel the performance of an act which has been expressly forbidden by injunction. It is immaterial, in this respect, whether the injunction has been issued by the same court to which the application for mandamus is made, or by another court of competent jurisdiction, or whether the performance of the act sought to be coerced by the mandamus in the mandamus proceeding would be in direct violation of an existing injunction, though the person seeking

relief by mandamus is not a party to the injunction suit. A court will never by this method command the violation of the commands of another court of competent jurisdiction, where such violation would subject a party to punishment for contempt of the court, or put him in conflict with such a court; nor will the court in such cases inquire into the propriety of the injunction." Spelling on Extraordinary Remedies, Vol. 2, sec. 1378. 'The relator can avoid the effect of the injunction and be relieved from it by an appeal from the order refusing to dissolve the injunction and continuing it in force as to the agricultural charts, if there be error in that order or decree. This would be a plain, adequate and expeditious remedy. This order refusing to dissolve, and continuing the injunction as to the matter in controversy, was entered in 1917, more than six years ago, and if any error had been committed by the lower court it could long since have been corrected by adequate appellate process instead of waiting until the former county superintendent, who was resisting the payment of the draft, had gone out of office and a new one elected, who knew nothing about the merits of the controversy. *State* v. *County Court*, 33 W. Va. 589. Moreover, it appears that R. O. Evans, the assignor of the school order in controversy, attempted, in the year 1918, to compel Jenkins, the county superintendent, by mandamus, to countersign this identical order, and that the suit for that purpose is yet pending in the circuit court, having been transferred from the common pleas court by consent of the parties, and that the court has determined by its order duly entered that the matter in controversy could be fully adjudicated in the injunction proceeding and the mandamus suit was stayed for that purpose. It is contended by relator that the mandamus proceeding in the common pleas and circuit courts by his assignor, R. O. Evans, was against the former county superintendent who has since gone out of office, and will not prevent him, the relator, from now proceeding by an independent suit in another court by mandatory process to compel the new financial secretary to act. It is claimed that that suit has in effect abated. It is not necessary to determine whether that suit could be ignored and a new one for practically the same purpose instituted in this court. It appears from the return,

setting up the proceeding by mandamus in the lower court, that a serious controversy as to the duty of the financial secretary to countersign and endorse this order has arisen, and that the matter is pending and undetermined by a court of competent jurisdiction.

It is well settled that mandamus will not issue unless the petition and proof show a clear and indisputable right on the part of the relator to enforce the performance of the particular act of the officer desired, and a corresponding duty on the part of the officer to do that particular act. *State* v. *Hall,* 86 W. Va. 1; *State ex rel. Smith* v. *County Court,* 78 W. Va. 168; *Martin* v. *White,* 74 W. Va. 628; *Hutton* v. *Holt,* 52 W. Va. 672. The duty of Jenkins, former financial secretary, to countersign this order is seriously questioned, and the controversy is pending. The payment for these charts has been enjoined, and on a motion to dissolve, the court continued the injunction in force. This order of the court has some of the ear marks of finality—a point unnecessary for us to decide. If it was not his duty to countersign it would not be the duty of the respondent, his successor in office, to so act. It is reasonably clear from the affidavit of Jenkins filed herein, supported by the correspondence with the board of education and its secretary, also filed, that he disapproved the purchase for which the order was issued, as he had a right to do under the then existing statute, and that this very question of his duty so to do is the subject of controversy in both the injunction suit and the mandamus proceeding, both of which are now pending in the circuit court of Kanawha county. Under such circumstances, we do not think that the peremptory writ should be issued, and it will be refused.

*Refused.*