## Wytheville.

HELEN G. MOORE v. COMMONWEALTH OF VIRGINIA.

June 12, 1930.

Absent, Campbell and Epes, JJ.

*Allen G. Collins* and *A. B. Dickenson*, for the plaintiff in error.

*W. W. Martin* and *H. R. Miller, Jr.*, for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

Helen G. Moore filed her application in writing, December 22, 1928, praying for relief from inheritance taxes which had been assessed December 27, 1927, and paid by the Virginia Trust Company, executor and trustee under the will of S. G. Atkins, nearly twelve months before the time the application was filed.

S. G. Atkins died in Richmond city November 30, 1915. By the seventh paragraph of his will he left the residuum of his estate to the executor, the Virginia Trust Company, as trustee, the income to be paid to the testator's sister, Laura A. Gregory, during her life and at her death two-thirds thereof to be held in trust for his niece, Helen G. Moore, plaintiff in error here, until she should have attained the age of twenty-five years, when it was directed that the principal of the fund be paid over to her, though in the event of the death of Helen G. Moore before reaching the age of twenty-five, or before the death of the life tenant, it was provided that this share of the estate should go to others. Helen G. Moore, however, became twenty-five years of age prior to the death of the testator.

The will contained a number of specific bequests, and as they were paid over, inheritance taxes were assessed by orders of the Chancery Court of the city of Richmond, but no assessment had been made upon the two-thirds of the residuum of the estate which so vested in the plaintiff, but of which she had no right of possession until the death of the life tenant, her mother, Laura A. Gregory, in August, 1927.

The Virginia Trust Company, executor and trustee, thereupon reported for assessment the amount to which the plaintiff then first became entitled to receive. This report was voluntarily made to the Auditor of Public Accounts.

The inheritance tax law which was in effect at the date of testator's death was the act of 1910 (Acts 1910, p. 229, c .148). The interest of his sister, the life tenant, was not subject to any inheritance tax thereunder. Under that act, so much of the estate as ultimately passed to the plaintiff under the will is made "subject to a tax at the rate of five per centum on every one hundred dollars value thereof." It was further provided that the collateral inheritance tax, if any, to be paid on the estate passing by will or adminis-

tration should be determined by certain local city courts, or by circuit court clerks of the county in which the will should be probated or the administration should be granted. It was also provided, among other things, that a personal representative liable therefor who failed to pay such a tax before the estate on which the same was chargeable should be paid or delivered over (whether he be applied to for the tax or not), should be liable in damages thereon at the rate of ten per centum from the time such estate was paid over or delivered until the tax was paid. Then there is this language, which is most significant when considered with reference to this part of the estate so bequeathed to Helen G. Moore: "Such estate shall be deemed paid or delivered at the end of a year from the decedent's death, unless and except so far as it may appear that the legatee or distributee has neither received such estate nor is entitled then to demand it." This can only be fairly construed in this case to mean that the portion of S. G. Atkins' estate which was received by Helen G. Moore was not to be taxed either within a year or at the time it became technically vested. It would have been impossible to assess the tax within a year from decedent's death because neither the amount nor the beneficiary could then be determined. By manifest implication, the time for the assessment of the tax to which that part of the estate bequeathed to Helen G. Moore was subject was when but not until the legatee, or in case of her previous death her distributees, became entitled to demand distribution. This time was postponed until the death of her mother in 1927, and her personal right to possession depended upon her own survival of her mother.

The trial court having found the facts which we have stated, declined to grant the application for the refund of the tax so paid, which amounted to $11,969.79, five per cent of the distributive share of the plaintiff, $239,395.78. That this share of the plaintiff was, by the 1910 statute,

then made subject to the five per cent tax, seems to be quite apparent from the reading of the act of 1910; and that such tax could not be demanded either of the executor or of the plaintiff until the date of distribution, in 1927, seems to us by necessary implication to be equally true.

The act of 1910 was amended in 1916 (Acts 1916, c. 484) by imposing a sliding scale of inheritance taxes, which is immaterial here. The portion of the argument for the plaintiff in error which is most emphasized is based upon the subsequent amendment made by the act of 1918, Acts 1918, p. 416, c. 238. The claim is that this act expressly repealed the act of 1910, and as a consequence the plaintiff in error is relieved from any obligation to pay these taxes.

Before referring to the precise language of the act of 1918 upon which this claim is based, we observe that Code, section 6, must be considered and accorded its legal effect. That section provides that repeal of a former law shall not affect liabilities or obligations incurred under the former law. Omitting so much of it as refers to the criminal law, it reads: "No new law shall be construed to repeal a former law, as to * * * any right accrued, or claim arising before the new law takes effect; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings, * *." So that if the act of 1910 was in fact repealed by the act of 1918, the repeal of that law did not affect the right of the Commonwealth to collect taxes imposed, nor relieve the plaintiff in error from paying the taxes to which the property was already subject. The obligations of those who should ultimately receive the property under the will of S. G. Atkins, however, became fixed at his death, though then neither the persons who should ultimately receive the estate after the death of the life tenant, nor the date upon which it would be so received, had been determined. This, as will be hereafter shown, accords with the frequently

applied rule as to inheritance taxes, even where there is no such statute as Code, section 6.

Coming now to the contention that the act of 1918 expressly repeals the act of 1910, so as to release this plaintiff from the collateral inheritance tax imposed by the former act, we find this: The title to the 1918 act makes no reference to any such express repeal. That title reads: "An act to amend and re-enact section 44 of an act entitled an act to raise revenue for the support of the government and public free schools, and to pay the interest on the public debt, and to provide a special tax for pensions as authorized by section 189 of the Constitution, approved April 16, 1903, and acts amendatory thereof." Then the concluding clause, which of course must be considered in connection with the title, reads thus: "All acts and parts of acts inconsistent with this act and specifically section forty-four of an act entitled an act to raise revenue for the support of the government and the public free schools and to pay the interest on the public debt and to provide a special tax for pensions, as authorized by section 189 of the Constitution, approved April the 16th, 1903, are hereby repealed."

It is upon the true construction of this concluding clause of the act of 1918 that the plaintiff's case depends.

Section 44 of the tax bill, referred to both in the title and in the concluding clause, is the section imposing inheritance taxes. Its purpose, as shown by the title, was not to repeal the inheritance tax law, but it was clearly an act to amend and re-enact the statute imposing an inheritance tax. It is in accordance with a good custom to say in the concluding clause of amendatory statutes that all acts and parts of acts inconsistent therewith are repealed by the amendment and re-enactment of the statute. If this had been all, perhaps the claim now made would never have been asserted. The difficulty suggested is that the repealing language of the statute refers specific-

ally to section 44 of the tax bill, which had already been once previously amended in 1916.

Of course every part of the act of 1918 must be considered, and when we observe that which is apparent from the title and substance of the act, *i. e.*, that its avowed purpose is the amending and re-enacting section 44, and continuing thereby the long established policy of the State to impose inheritance taxes, we are sure that the General Assembly would not have undertaken (if under the Constitution it had the power to do so) to relieve all persons and estates then subject to inheritance taxes from their payment without an unqualified expression of such a purpose. If the construction contended for be the true construction, every pending case involving inheritance taxes would have been thenceforth and thereby concluded adversely to the Commonwealth, and every estate then in process of settlement, and every distributee thereof, would have been relieved of inheritance taxes. A construction leading to results so contrary to the avowed policy of the State certainly should not be adopted upon doubtful language.

It seems to us that the true construction of the repealing clause is not to hold that all of the obligations imposed by section 44 of the tax bill, as enacted in 1910, were abrogated, but that only such part of section 44 was repealed as was inconsistent with the amendment of 1918. It is certainly probable that there were no acts or parts of acts which were inconsistent with section 44, as amended by the act of 1918, except section 44 as it had been previously amended. The true construction of the repealing clause, considered in conjunction with the amending and re-enacting clause, is that so much of section 44 and other acts or parts of acts (if any) as were inconsistent with the act of 1918 are repealed.

The express purpose of the amending act was to continue the imposition of inheritance taxes upon estates of persons

thereafter dying. This without more would not relieve this plaintiff because her obligation to pay these taxes had already arisen under the act of 1910, though the precise date when her possession would accrue and when she would have to pay the taxes could not be determined until after the death of the life tenant; and so Code, section 6, a rule of statutory construction to which we have previously referred, would apply—that is, that no new law shall be construed to repeal a former law as to rights acquired and obligations incurred under the former law. A similar general statute is so construed in *Cavanaugh* v. *Patterson,* 41 Colo. 158, 91 Pac. 1117.

We do not know that any further citation is necessary, but in view of the earnestness with which the claim is made, we will pursue the subject further.

25 Ruling Case Law, section 186, page 934, expresses the general rule which is applicable: "But the prevailing view is that where a statute is repealed, and all or some of its provisions are at the same time re-enacted, the re-enactment neutralizes the repeal, and the provisions of the repealed act which are thus re-enacted continue in force without interruption so that all rights and liabilities that have accrued thereunder are preserved and may be enforced."

In *Trippet* v. *State,* 149 Cal. 521, 86 Pac. 1084, 8 L. R. A. (N. S.) 1210, a succession tax levied under a statute which had been repealed is held to be a vested right in the State, and this is quoted from Sutherland on Statutory Construction (2d ed.), section 238: "Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time."

In *Hoyt* v. *Hancock*, 65 N. J. Eq. 688, 55 Atl. 1004, there was a will which became effective while the provisions of the collateral inheritance tax act (N. J.) of 1893 (P. L. p. 367) were in force. The testator created a fund, the income of which was payable to his sister for life, with power of appointment of the principal by will. She, by her will which became effective in 1895, appointed the surviving husband as beneficiary. It was held that the interest of the husband under this power of appointment must be considered as having been acquired at the time the first testator's will creating the power of appointment took effect; and, second, that such interest was taxable under the provisions of the act of 1893, although the act of 1893 had been repealed by the collateral inheritance tax act of 1894 (P. L. 318). The repealing act involved in that case undertook to reserve the powers, rights, or privileges acquired by the State under any previous act. It was held that the State's right to tax the interest acquired by the husband remained unrepealed and that the estate could still be taxed under the inheritance tax act of 1893.

This expression from *Golden Valley County* v. *Lundin*, 52 N. D. 427, 203 N. W. 317, 319, is pertinent: "The legislative intention must primarily be determined from the language of the statute. And if the language is plain, certain and unambiguous, so that no doubt arises from its own terms as to its meaning, then there is no room for interpretation, and the statute must be given effect according to its terms. But the legislative intention must be sought from the whole act, and not merely from certain parts of it; and where certain provisions of an act are inconsistent with other provisions of the same act, then it becomes incumbent upon the courts to determine which must prevail in order to carry out the legislative purpose and intention. We are aware of no good reason why this rule should not be applied where inconsistency or ambiguity

12

is created by reason of a repeal clause in a statute. In other words, we are aware of no good reason why a statute containing a repeal clause should be exempted from the rule that the statute must be construed as a whole. And where the legislature enacts a law containing a clause expressly repealing a former statute, and, in the act which contains the repealing clause, re-enacts certain provisions of the law which the repeal clause purports to abrogate, a court is not justified in accepting the repeal clause as sole evidence of the legislative intention. In such case, the statute should be considered as a whole, and the legislative intention thus evidenced given effect. In such case, it can hardly be said that the legislature evidenced an intention to abrogate the rule which they re-enacted and thus declared should be put into effect contemporaneously with the repeal clause. The rule supported both by reason and authority is that in such case the provisions of the repealed act, which are thus re-enacted, continue in force without interruption.

So also, in *White Sewing Machine Co.* v. *Harris*, 252 Ill. 366, 96 N. E. 857, 858, Ann. Cas. 1912 D, 536, the rule is repeated: "When there is an express repeal of a statute and a re-enactment of all or a portion of it at the same time, the re-enactment neutralizes the repeal so far as the provisions of the old law are contained in the new one. As to the portion unchanged in form or substance, the amendatory act is a mere continuation of the original act."

Of course, such an amendatory act is prospective in operation. The act of 1918 under consideration applies to the estates of persons who die and to those whose titles vest after this amendatory act becomes effective, but certainly should not be construed to be intended to relieve any from tax liabilities which were already specifically imposed by prior statutes unless such a construction is made necessary by the language used.

█ In this case there is no irreconcilable conflict between the two acts. They both impose inheritance taxes. The amendatory act imposes them at varying rates and provides for enforcement in greater detail than had been provided in the previous statute.

Another very pertinent case is *Commonwealth* v. *Mortgage Trust Co. of Pennsylvania,* 227 Pa. St. 163, 76 Atl. 5. This was a case involving valuation for taxation purposes of shares of stock held by a trust company, and it was held that though the Commonwealth had not expressly reserved the right to collect taxes which had accrued under the repealed statute, nevertheless, notwithstanding such repeal, the corporations were still required to pay the taxes which had accrued under the old statute, and the fact that in the future the taxes would be assessed differently would not relieve them from the taxes imposed by the former statute, though the former statute had been expressly repealed.

In Cooley on Taxation (4th ed.), section 538, it is said: "So the repeal of an inheritance tax statute will not affect the right of the State to impose the tax upon the estates of persons who died before the repeal became effective."

The right of the State is clear. Whether in the particular case the right has been exercised depends upon the statutes relating to the subject.

█ Our conclusion is that the act of 1918 did not nullify the act of 1910, or displace either the vested right of the Commonwealth to the tax, or the obligation of the plaintiff to pay it, but it had prospective operation, affecting the estates of persons who died after it became effective, leaving the estates of persons who died before it became effective and their legatees, devisees and distributees subject to the previous statutes so far as they were applicable.

█ It is also earnestly contended that this tax cannot be enforced because of the lack of machinery for the assessment.

The particular assessment here involved was made by the Auditor of Public Accounts under an act adopted in 1924 (Acts 1924, chapter 305). Previous to that the assessment of the inheritance tax had been made by the courts and clerks. By that act, which imposed inheritance taxes upon the estates of persons dying on or after April 1, 1924, and upon estates which vested in interest after that date, the Auditor of Public Accounts was specifically authorized to make the assessment. The Auditor made the assessment which is here complained of.

In our view of the matter, even though the Auditor may have had no authority to make the particular assessment, this is quite immaterial. If the Auditor had not the power, then it remained in the Chancery Court of Richmond city, under the previous act. In this case, it is observed, no complicated or elaborate machinery is necessary because there can be no question as to the proper amount of the tax—that is, the tax imposed by the act of 1910, five per centum of the value of the estate which and when it passed to the legatee. The value of the estate is conceded. The tax has already been paid, and so the precise machinery seems immaterial unless the tax would have been illegal in any event. The executor and trustee under the Atkins will was required by that statute to pay it. It is of course true that had the tax been an erroneous tax, the plaintiff is entitled to have it refunded, but the burden is upon her, in such a case, not merely to show some irregularity in the assessment, but some invalidity in the tax which makes its exaction illegal.

In the case of *Commonwealth* v. *Schmelz*, 114 Va. 364, 76 S. E. 905, it is held, construing such a statute, that a taxpayer who comes into court to be relieved from paying more taxes than he claims he ought to pay, renders himself liable in that proceeding to pay all taxes with which he is chargeable in that jurisdiction upon a correct assessment

of his property, and to this end the court may examine into and do all that the commissioner of the revenue is required to do under the pertinent provisions of the Code.

So here, when this plaintiff invoked the statute for relief against illegal taxes and applied to the Circuit Court of the city of Richmond for exoneration and refund of these taxes, the burden was upon her to show that the State had exacted taxes from her which were illegal. Even though there had been an error of procedure, the court should nevertheless have ascertained and enforced the payment of the correct amount legally due under correct procedure.

Following that case, this is said in *Rixey's Executors* v. *Commonwealth*, 125 Va. 357, 99 S. E. 573, 101 S. E. 404, 405: "It serves no good purpose, then, to inquire whether or not the officials charged with the duty of enforcing the tax statutes requiring proper returns performed their duty, for when the case was heard in the Circuit Court of Culpeper county it was its duty to enter an order requiring the petitioners to pay such taxes as they should have paid, and this without reference to any omissions, defects or deficiencies in the assessments previously made.

"Section 174 of the Constitution provides, among other things, that 'no statute of limitation shall run against any claim of the State for taxes upon any property; nor shall the failure to assess property for taxation defeat a subsequent assessment for, and collection of, taxes for any preceding year or years,' etc."

In *Heth* v. *Commonwealth*, 126 Va. 498, 102 S. E. 66, 68, we had occasion to say this: "As to the suggestion that the original assessment was irregular, it is only necessary to say when one seeks relief under the Virginia statutes from a tax alleged to be erroneous, the regularity of the original assessment is of little consequence if it appears that the statute under which the tax is imposed is valid. If no tax is justly due, the court should correct the injustice and

relieve the complaining citizen therefrom. If, however, the whole or any part thereof is justly due, the court should correct any improper assessment, determine the true amount of such tax, and enter judgment therefor."

Much more might be said if we followed the briefs and discussed all of the questions there discussed. We think it only necessary to say that this tax was without qualification imposed by the act of 1910; that it could not be assessed against the legatee, Mrs. Moore, until the time when she was about to receive it; that the true amount of such tax is the precise amount which was paid; that it became assessable in 1927, after her mother's death; that the executor could not have closed the accounts without paying the tax; that the plaintiff in error has entirely failed to carry the burden under which she rested—that is, to show that the tax which had been voluntarily paid was not justly due. The record clearly shows that it should have been paid, and there is no error in the order of the trial court.

*Affirmed.*