STATE OF WEST VIRGINIA *ex rel.* FRANCIS P. WARDER,
*Member* OF THE WEST VIRGINIA BOARD OF PROBATION
AND PAROLE

*v.*

DENZIL GAINER, *Auditor* OF THE STATE OF WEST VIRGINIA

(No. 12820)

Submitted March 25, 1969.          Decided March 28, 1969.

36

*George W. Stokes,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Cletus B. Hanley,* Assistant Attorney General, for respondent.

CALHOUN, JUDGE:

In this mandamus proceeding instituted in this Court pursuant to its original jurisdiction in cases of this character, Francis P. Warder, the relator, seeks to require the respondent, Denzil L. Gainer, Auditor of the State of West Virginia, pursuant to duties imposed upon him as such auditor by Code, 1931, 12-3-1, as amended, to issue a warrant to the relator in the sum of $367.20, representing the salary alleged to be owing to the relator as a member of the West Virginia Board of Probation and Parole for the first half of the month of March, 1969, being the period of March 1 to March 16, inclusive.

Pursuant to the prayer of the mandamus petition, a rule to show cause was issued by the Court and made returnable on March 25, 1969, at ten o'clock a.m., on which day the case was submitted for decision upon the mandamus petition, the demurrer and answer to the petition submitted and filed on behalf of the respondent, upon a stipulation of facts and upon briefs in writing and oral argument of counsel for the respective parties. The questions presented for decision are purely questions of law, the pertinent facts being undisputed.

By an order entered on March 28, 1969, the Court awarded a writ of mandamus as prayed for in the peti-

tion. Pursuant to a reservation in the order of the right to do so, this opinion has been prepared in order to state in greater detail the basis of and the reasons for the Court's decision.

The relator was appointed by Governor Hulett C. Smith as a member of the board of probation and parole. He qualified as such on June 16, 1966, and his appointment was duly confirmed by the state senate at its 1967 Regular Session.

The Regular Session, 1969, of the Legislature convened on January 8, and adjourned sine die on March 11, 1969. The term of office of Governor Arch A. Moore, Jr., commenced on January 13, 1969. Governor Moore did not reappoint the relator, and has not appointed any other person in his stead, as a member of the board of probation and parole. In these circumstances, the state senate adjourned sine die without having had an opportunity to approve or to disapprove such an appointment. It is asserted in behalf of the respondent state auditor, as the basis of his refusal to honor and to sign the salary requisition in question, that, in the circumstances previously stated in this paragraph, and in the light of the provisions of Code, 1931, 6-7-2a, as last amended and reenacted on January 21, 1969, the office held by the relator became vacant upon the adjournment of the legislature on March 11, 1969. The basis of this contention will be stated more fully hereafter in this opinion.

Code, 1931, 6-7-2a, as a consequence of its amendment and reenactment by Chapter 76, Acts of the Legislature, Regular Session, 1965, so far as pertinent to this case, was as follows:

> "Notwithstanding any other provision of this code to the contrary, on and after the effective date of this section, each of *the terms of* the following named appointive state officers *shall be terminated and thereafter each of such appointive state officers* shall be appointed by the governor, by and with the advice and consent of the senate. Each of such appointive state officers

shall serve at the will and pleasure of the governor *for the term for which the governor was elected* and until the respective state officer's successors have been appointed and qualified. Each of such appointive state officers shall hereafter be subject to the existing qualifications for holding each such respective office and each shall have and is hereby granted all of the powers and authority and shall perform all of the functions and services heretofore vested in and performed by virtue of existing law respecting each such office. The annual salary of each such named appointive state officer shall be as follows: * * *." (Italics supplied.)

Section 2a, from which the above language has been quoted, was first enacted by Chapter 147, Acts of the Legislature, Regular Session, 1957. As originally enacted, the statute dealt solely with salaries of the appointive state officers therein enumerated. All the language of Section 2a quoted above was added by the 1965 amendment. The italicized portion thereof was deleted and omitted therefrom by the 1969 amendment and reenactment.

The 1969 amendatory act is referred to in the record in this case as Enrolled Senate Bill No. 35, which was passed January 21, 1969, and made effective from the date of its passage. In addition to the deletion or omission from the statute of certain language as previously indicated, the 1969 amendment and reenactment of Section 2a changed subsequent portions of the statute in other respects which are not here pertinent. Primarily the other changes accomplished by the 1969 amendment and reenactment of Section 2a resulted in increases in salaries of various appointive state officers therein enumerated. We believe it is common knowledge that the basic purpose of the legislature in amending and reenacting the statute in 1969 was to provide for increases in salaries of officers who might thereafter be appointed by Governor Moore, after the commencement of his term of office on January 13, 1969, and before the appointments became effective.

Both the demurrer and the answer to the mandamus petition raise the basic legal question presented for decision. The respondent admits in his answer that the relator, as a consequence of his valid appointment by the previous governor and the valid confirmation of such appointment by the senate, continued in office under the holdover provisions of the laws of this state after the expiration of the term of office of the former governor, Honorable Hulett C. Smith, after the commencement of the term of office of Honorable Arch A. Moore, Jr., as the newly-elected governor, and after the enactment and effective date of Enrolled Senate Bill No. 35. It is contended, however, by counsel for the respondent that the relator's holdover status as an appointive state officer terminated, by operation of law, upon the adjournment sine die of the senate. It is contended that this legal consequence arises from the enactment of Enrolled Senate Bill No. 35 which, as has been previously stated in this opinion, amended and reenacted Code, 1931, 6-7-2a, as previously amended.

As we understand the contention made in this respect in behalf of the respondent, reliance is placed upon the fact that Enrolled Senate Bill No. 35 was made effective from the time of its passage on January 21, 1969, and the fact that the statute as thus amended and reenacted, contained the following language: "Notwithstanding any other provision of this code to the contrary, *on and after the effective date* of this section *each of the following named appointive state officers shall be appointed by the governor, by and with the advice and consent of the Senate.* Each of such appointive state officers shall serve at the will and pleasure of the governor and until the respective state officer's successors have been appointed and qualified. * * *." (Italics supplied.) Counsel for the respondent apparently rely primarily upon the italicized portion of Enrolled Senate Bill No. 35 in the quotation appearing immediately above, which was placed in the statute by the 1965 amendment and was retained without

change in the statute as amended and reenacted in 1969.

Counsel for the respondent assert in their brief that, as a consequence of the enactment of Enrolled Senate Bill No. 35, it became the mandatory duty of the present governor, Honorable Arch A. Moore, Jr., to reappoint the petitioner, or some other person in his stead, to the appointive state office in question and that, upon his failure to do so, and upon the adjournment sine die of the senate, the relator no longer had title to the appointive state office and therefore was not thereafter entitled to receive a salary as a member of the board of probation and parole. The contention urged in behalf of the respondent appears to be that Enrolled Senate Bill No. 35 superseded and supplanted all preexisting provisions of Section 2a as enacted in 1965 and *created* an affirmative duty upon the incoming governor, Honorable Arch A. Moore, Jr., to reappoint the relator, or some other person in his stead, so that the state senate would not be denied a right to approve or to disapprove such an appointment. We are of the opinion that this contention is not legally tenable.

It is not disputed that mandamus is a proper procedure in this case. "Mandamus is a proper remedy by a de jure official to secure payment of his salary for services rendered in such office." *State ex rel. Wayne* v. *Sims,* 141 W. Va. 302, 305, 90 S. E.2d 288, 291. See also *State ex rel. Downey* v. *Sims,* 125 W. Va. 627, 629, 26 S. E.2d 161, 162.

Article IV, Section 8 of the Constitution of West Virginia is as follows: "The legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." Code, 1931, 62-12-12, as amended, provides for the creation of the West Virginia Board of Probation and Parole, consisting of three members. The statute contains the following language: "The board shall be appointed by the governor by and with the advice and consent of the

senate. * * * Any member shall be eligible for reappointment. * * *." This statute was enacted pursuant to the provisions of Article IV, Section 8 of the Constitution of West Virginia. *State ex rel. Fox* v. *Brewster,* 140 W. Va. 235, pts. 1 and 2 syl., 84 S. E.2d 231.

Article VII, Section 9 of the Constitution of West Virginia is as follows: "In case of a vacancy, during the recess of the senate, in any office which is not elective, the governor shall, by appointment, fill such vacancy, until the next meeting of the senate, when he shall make a nomination for such office, and the person so nominated, when confirmed by the Senate, * * * shall hold his office during the remainder of the term, *and until his successor shall be appointed and qualified.* * * *." (Italics supplied.) The following language appears in the opinion in *State ex rel. Downey* v. *Sims,* 125 W. Va. 627, 632, 26 S. E.2d 161, 163: "The Constitution provides exactly what the Senate can do with regard to gubernatorial nominations to office: It may either consent to or reject the nominee for the particular office to which he has been nominated. This is the full maximum of the grant of power of the Senate over appointments by the Governor. And this grant of a specific and clearly defined power is, by implication equally potent, a denial of any other power in the premises. * * *." The power thus lodged in the senate was scrupulously upheld in *State ex rel. Wayne* v. *Sims,* 141 W. Va. 302, 90 S. E.2d 288. That case involved an appointment made by the governor, during the recess of the senate, to fill a vacancy in an appointive state office. The senate thereafter met and adjourned without the appointment having been submitted to the senate for confirmation. The Court held that, in those circumstances, the appointment expired upon the adjournment of the senate, that the appointee thereafter had no title to the office and was not entitled thereafter to receive a salary for the office in question. The *Wayne* case is not in point in the instant case, for the reason that the appointment of the relator in this case previously had been duly

confirmed by the senate. The senate, therefore, has not been denied its right to act upon the relator's interim appointment. The instant case does not involve a vacancy occurring in the appointive state office during the recess of the senate within the meaning of the constitutional provision quoted above.

Code, 1931, 6-5-2, is as follows: "The term of every officer shall continue (unless the office be vacated by death, resignation, removal from office, or otherwise) until his successor is elected or appointed, and shall have qualified."

Inasmuch as the relator continued in office under the holdover provisions of the laws of this state, there was no "vacancy" in that office within the meaning of Article VII, Section 9 of the Constitution of West Virginia, or within the meaning of Code, 1931, 6-5-2, at the time the state senate adjourned on March 11, 1969. *State ex rel. St. Clair* v. *Marinari*, 150 W. Va. 373, pt. 2 syl., 145 S. E. 2d 464; *Stowers* v. *Blackburn*, 141 W. Va. 328, pt. 5 syl., 90 S. E.2d 277; *State ex rel. Hatfield* v. *Farrar*, 89 W. Va. 232, 235, 109 S. E. 240, 241. "There is no vacancy in a public office when there is an incumbent legally authorized to discharge the duties thereof." *Broadwater* v. *Booth*, 116 W. Va. 274, pt. 2 syl., 180 S. E. 180. To the same effect, see *State ex rel. St. Clair* v. *Marinari*, 150 W. Va. 373, 378, 145 S. E.2d 464, 467; *State ex rel. Wayne* v. *Sims*, 141 W. Va. 302, 308, 90 S. E.2d 288, 292; *State ex rel. Jones* v. *Ingram*, 135 W. Va. 548, 552, 63 S. E.2d 828, 830. The holdover status of the relator, however, does not preclude the power of the governor to reappoint the relator or to appoint another in his stead, subject to the approval of the senate. *State ex rel. Neal* v. *Barron*, 146 W. Va. 602, 120 S. E.2d 702.

As we have stated previously, the contention made in behalf of the respondent apparently is based primarily upon the following language of Enrolled Senate Bill No. 35: "* * * on and after the effective date of this section each of the following named appointive state officers

shall be appointed by the governor, by and with the advice and consent of the Senate." The language quoted above was placed in the statute by the 1965 amendment and reenactment thereof. The duty thereby imposed upon the governor was, therefore, in effect and operative upon Governor Moore when he took office on January 13, 1969. The 1969 reenactment of the statute did not create that duty nor did it add to, detract from or otherwise alter the duty imposed by the statute as amended and reenacted in 1965. The relator was appointed by Governor Smith and the appointment was confirmed by the senate pursuant to the language then and now contained in Section 2a. The statute at that time provided expressly that the relator's term of office, pursuant to his appointment by the governor and the confirmation of the appointment by the senate, would continue until his successor was "appointed and qualified." This holdover provision of the statute was not expressly repealed, but, on the contrary, it was expressly retained by the 1969 amendment and reenactment.

Counsel for the respondent, in effect, undertake to read into the Enrolled Senate Bill No. 35 a provision for termination of the relator's holdover status which is not contained therein, either by express language or by necessary implication. The contention made in behalf of the respondent is at variance with the holdover provision expressly retained in Enrolled Senate Bill No. 35 and at variance with the general holdover provisions contained in Code, 1931, 6-5-2. Repeal of a statute by implication is not favored in law. *State ex rel. The City of Wheeling* v. *Renick,* 145 W. Va. 640, 116 S. E.2d 763. While a constitutional question has not been raised and is not essential to a decision of this case, the contention made in behalf of the respondent may also be in contravention of the holdover provision of Article VII, Section 9 of the Constitution of West Virginia.

We should bear in mind that Enrolled Senate Bill No. 35 did not repeal Code, 1931, 6-7-2a, as amended, but rather it merely amended the statute in particulars which,

we believe, are not here pertinent. All the language pertinent to a decision of this case was retained by the 1969 amendment and reenactment. When a statute is amended and reenacted in substantially the same form and language, portions of the statute which are retained in the statute as amended continue in operation without interruption and never ceased to exist. *State v. Mason,* 141 W. Va. 217, pt. 1 syl., 89 S. E.2d 425; *The Chesapeake and Ohio Railway Company* v. *Public Service Commission of West Virginia,* 139 W. Va. 161, 181, 81 S. E.2d 700, 712; *Beck* v. *Cox,* 77 W. Va. 442, pt. 3 syl., 87 S. E. 492; *Burns* v. *Hays,* 44 W. Va. 503, pt. 3 syl., 30 S. E. 101; *State* v. *Mines,* 38 W. Va. 125, pt. 7 syl., 18 S. E. 470; *Curran* v. *Owens,* 15 W. Va. 208, pt. 7 syl.; *Moore* v. *Commonwealth,* 155 Va. 1, 155 S. E. 635; Annot., 77 A.L.R. 2d, Section 3, page 341; 50 Am. Jur., Statutes, Section 533, page 538; 82 C.J.S., Statutes, Section 294, page 503 and Section 295, page 505.

We must presume that the legislature did not intend, by the enactment of Enrolled Senate Bill No. 35, to create a vacancy in the office in question, or a hiatus or interregnum in government. "The purpose of provisions authorizing public officers to hold over is to prevent a hiatus in the government pending the time when a successor may be chosen and inducted into office." 43 Am. Jur., Public Officers, Section 164, page 21. "The law abhors vacancies in public offices, and courts generally indulge a strong presumption against a legislative intent to create, by statute, a condition which may result in an executive or administrative office becoming, for any period of time, wholly vacant and unoccupied by one lawfully authorized to exercise its functions." 67 C.J.S., Officers, Section 50, page 207. To the same effect, see *State ex rel. Fox* v. *Brewster,* 140 W. Va. 235, 254-55, 84 S. E.2d 231, 243.

For the reasons stated in this opinion, the writ of mandamus as prayed for was awarded.

*Writ awarded.*