# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


BRETT COLBY RICHARDSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0718-21-1                  JUDGE VERNIDA R. CHANEY
                                                     SEPTEMBER 13, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge[1]

Chad G. Dorsk (Dorsk Law Office, PLC, on brief), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a combined suppression hearing and bench trial in the Circuit Court of the City

of Chesapeake ("trial court"), Brett Colby Richardson ("Richardson") was convicted of felony

possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2, and

misdemeanor marijuana possession, in violation of former Code § 18.2-250.1 (repealed by 2021

Va. Acts Spec. Sess. I, chs. 550-51, eff. July 1, 2021).[2]  Richardson contends on appeal that the

trial court should have suppressed the firearms found during a warrantless vehicle search on his

driveway in the curtilage of his home.  Richardson also argues that the evidence is insufficient to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Frederick B. Lowe presided over the combined suppression hearing and trial.

[2] Richardson's notice of appeal identifies "the decision of this [c]ourt entered
07/08/2021" as the appealed order.  Richardson's sentencing hearing was held on July 8, 2021,
and the sentencing order was entered July 23, 2021.  The sentencing order includes sentences for
the felony firearm conviction and marijuana conviction, for which Richardson was fined $25.
Richardson did not assign any error related to the marijuana conviction or sentence.

sustain the firearm conviction. For the following reasons, this Court affirms the trial court's judgment.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). This Court "regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id*. at 473 (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

On May 31, 2017, in the early evening, several officers from the Chesapeake Police Department were dispatched to Richardson's house in response to a domestic complaint involving a "male subject [who] had a gun and was not supposed to have one." When the police arrived, Richardson and his wife were arguing in front of their house. Richardson was standing on his driveway next to the driver's side of his car with the driver's door open. The car was not on. Richardson's wife was seated on the front porch with a young child in her arms.

Officer Baker directed Richardson to step away from his car because the car door blocked the officers' view of Richardson's right hand. Richardson complied and closed the car door. He was not holding anything in either hand. When Richardson calmly asked if he was under arrest, Officer Baker responded, "Would you like to go into cuffs, Sir? Put your hands behind your back." Richardson did not immediately comply, but a few seconds later, he stated, "I'm going to do it." Officer Baker and Officer Quindara both testified that Richardson was initially aggressive toward the officers because he did not want them on his property.

As Officer Baker handcuffed Richardson's hands behind his back, Officer Baker asked, "Do you have a weapon on you?" When Richardson responded, "no," Officer Baker informed

him that the police received a call about a weapon. Detecting a strong odor of marijuana, Officer Baker asked, "Did you recently smoke weed too? Because you reek of it." Then he moved Richardson toward the street and directed him to sit on the curb. Officer Baker testified that he isolated Richardson to determine whether the odor of marijuana was coming from him. Officer Baker continued to question Richardson while standing in the street.

While Officer Baker questioned Richardson at the curb, Officer Quindara questioned Richardson's wife on the front porch. Mrs. Richardson explained that she called for help because Richardson had threatened to kill himself and "to blow his brains out" after she threatened to leave him. Mrs. Richardson stated that their argument was strictly verbal. Additionally, Mrs. Richardson reported that she did not know whether Richardson possessed a gun or knife or any weapon at all.

While Richardson was detained at the curb, Officer Baker told Richardson that he was in custody because the police were notified about a domestic situation with a weapon.[3] Richardson explained that he and his wife were trying to work through marital issues and were arguing about his wife's infidelity. Richardson again denied having any weapons on him and claimed that he did not mean any threats he may have made about killing himself. But Richardson admitted that he had smoked marijuana before the police arrived at his house.

After Richardson admitted to smoking marijuana, Officer Baker asked whether there was any marijuana in his car. When Richardson denied that his car contained marijuana, Officer Baker stated, "We're going to search that car. Because the smell of marijuana is enough for me to arrest you, detain you, and search the car, and that's what we are going to do for sure." Officer Baker proceeded to search Richardson's person and found no drugs or weapons.

---

[3] Richardson did not challenge the lawfulness of this seizure of his person.

However, Officer Baker removed Richardson's car key from his pocket and said, "I'm going to hang on to that just so I can get in the car, okay?" Richardson replied, "All right."

Before searching the car, Officer Baker moved Richardson from the curb to the fence near the front of his house. Then Officer Baker directed another officer to detain Richardson while he searched Richardson's car. Officer Quindara questioned Richardson while he was detained at the fence. Richardson again denied having any actual suicidal intent.

As Officer Baker re-approached Richardson's car, he stopped to inform Officer Prescott, "He reeks of weed. He's already admitted to smoking it. They're having a verbal altercation— no weapon apparently."

When Officer Baker re-approached the car where Richardson had been standing, he again smelled the odor of marijuana coming from the car. Officer Baker testified that he searched the car because of this odor of marijuana. However, after opening the driver's door, Officer Baker immediately searched a gym bag on the driver's seat. He found two firearms and ammunition in a cardboard box inside the gym bag. After thoroughly searching the car and finding no drugs, Officer Baker found a burned marijuana roach directly underneath the driver's side of the car where Richardson had been standing when police arrived.

The box containing the firearms was found beneath "male clothing consistent with Mr. Richardson's size." Both firearms were in mechanical operating condition. Officer Baker also found Richardson's driver's license in the glove compartment. A background check revealed that Richardson had a prior felony conviction.

Before the officers arrested Richardson for felony firearm possession, Officer Prescott told Officer Baker that the evidence is "not going to count" as concealed weapons because "it's his property; it's his curtilage." Officer Prescott advised Officer Baker to consult their sergeant

and stated, "We're on his driveway looking for narcotics. We weren't here for that. . . . He's on his curtilage. I'd call in just to make sure."

After Officer Quindara informed Richardson of his *Miranda* rights, he initially denied that the gym bag and firearms were his. Subsequently, Richardson acknowledged that the gym bag contained his clothing and two firearms. When Officer Baker stated that Richardson was not allowed to possess firearms because he is a convicted felon, Richardson responded, "Even if it's hers?"

Richardson's wife informed the police that she observed Richardson bring the gym bag out of the house. Mrs. Richardson told the police that she did not know the contents of the gym bag.

At trial, a certified sentencing order for Richardson's prior felony conviction was admitted into evidence. Richardson was convicted in June 2009 in the Circuit Court of the City of Chesapeake of custodial indecent liberties with a child, in violation of Code § 18.2-370.1.

Following the combined suppression hearing and trial, the trial court found that the police were lawfully on Richardson's property in response to the call regarding a domestic dispute. The trial court also found that "[t]hey would have had no cause to go into that car" until "they detected the odor of marijuana coming from not only the defendant, but also from the vehicle." The trial court ruled that the officers lawfully searched the car's interior and the things therein which might hide contraband. The trial court denied the suppression motion and found Richardson guilty as charged.

Richardson filed post-trial motions to reconsider the denial of his suppression motion and to set aside the verdict due to the alleged insufficiency of the evidence to sustain the firearm conviction. Following a post-trial hearing, the trial court denied Richardson's post-trial motions.

The trial court sentenced Richardson to incarceration for the mandatory minimum period of five years on the felony firearm conviction. This appeal followed.

## II. THE MOTION TO SUPPRESS

Richardson argues on appeal that the trial court erred in denying his motion to suppress the firearms found in his car. Richardson contends that the police violated his Fourth Amendment right against unreasonable searches when, without a warrant, Officer Baker re-approached and searched his car on his private driveway in his home's curtilage.

### A. Standard of Review

On appeal of the denial of a motion to suppress evidence, this Court "determine[s] whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Merid v. Commonwealth*, 72 Va. App. 104, 108 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)), *aff'd*, 300 Va. 77 (2021), *cert. denied sub nom. Merid v. Virginia*, 142 S. Ct. 1137 (2022). Richardson's "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact . . . ." *Id.* at 108-09 (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 109 (quoting *Cantrell*, 65 Va. App. at 56). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." *Id.* (quoting *Cantrell*, 65 Va. App. at 56; *see also Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) ("[We] 'review[ ] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment.'" (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020))).

## B. The Warrantless Vehicle Search in the Home's Curtilage

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The area "immediately surrounding and associated with the home"—the curtilage—is "part of the home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984). "Warrantless searches, of course, are *per se* unreasonable, subject to a few well-defined exceptions." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Abell v. Commonwealth*, 221 Va. 607, 612 (1980)). One recognized exception to the Fourth Amendment's warrant requirement is the so-called "automobile exception," under which a warrantless vehicle search is not unconstitutional where police have probable cause to believe that the vehicle contains contraband. *See Carroll v. United States*, 267 U.S. 132 (1925) (upheld warrantless vehicle search where police officers had probable cause to believe that a traveling car contained illegal liquor).[4]

Richardson contends that the police conducted a warrantless, unconstitutional search in the curtilage of his home when Officer Baker re-approached and searched his car for marijuana.[5] In *Collins v. Virginia*, 138 S. Ct. 1663, 1678 (2018), the United States Supreme Court held that the automobile exception to the Fourth Amendment does not permit a police officer's warrantless entry on a private driveway in the curtilage of a home to search a vehicle parked therein. The curtilage of the house "enjoys [constitutional] protection as part of the home itself." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). "So long as it is curtilage, a parking patio or carport

---

[4] When officers have probable cause to search a vehicle, "they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 799 (1982).

[5] At the time of the vehicle search here, marijuana possession was prohibited by Code § 18.2-250.1 (repealed by 2021 Va. Acts Spec. Sess. I, chs. 550-51).

into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." *Collins*, 138 S. Ct. at 1675.

To determine whether a driveway is part of the curtilage of the home, "the centrally relevant consideration [is] whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301 (1987). In *Dunn*, the Supreme Court identified four factors as "useful analytical tools only to the degree that, in any given case, they bear upon [this] centrally relevant consideration." *Id.* These four factors are "[1.] the proximity of the area claimed to be curtilage to the home, [2.] whether the area is included within an enclosure surrounding the home, [3.] the nature of the uses to which the area is put, and [4.] the steps taken by the resident to protect the area from observation by people passing by." *Id.*

The area of the driveway where Richardson's car was parked was within the curtilage because it was intimately tied to the Richardsons' home. The car was parked on the upper part of the Richardsons' private residential driveway directly in front of and facing the front door of their home. The front of the parked car was a few feet away from the non-enclosed front porch. This placement of the car partially shielded the front porch from observation. Based on the Richardsons' activity on the date their car was searched, the Richardsons' use of the driveway area where the car was parked included conversing about private family matters such as their marriage and marital infidelity. To the extent that the searched car was in an area adjacent to the Richardsons' home and in an area to which the activity of their home life extended, the car was in the curtilage of their home.

Assuming without deciding that Officer Baker violated the Fourth Amendment when, without a warrant, he re-approached and searched Richardson's car in his home's curtilage, the

trial court did not err in denying Richardson's motion to suppress the firearms found in the car.[6]

Our decision on this issue is controlled by our Supreme Court's holding in *Collins v. Commonwealth*, 297 Va. 207 (2019), on remand from the United States Supreme Court's decision in *Collins v. Virginia*, 138 S. Ct. at 1668. Although the United States Supreme Court reversed the Virginia Supreme Court's application of the automobile exception to uphold a warrantless entry and search on the driveway in a home's curtilage, the Virginia Supreme Court concluded on remand that the violation of Collins' Fourth Amendment rights did not warrant the suppression of evidence. As our Supreme Court noted, the exclusion of evidence obtained pursuant to a Fourth Amendment violation is not justified when the police acted with an objectively reasonable, good faith belief that the search was lawful. *See Collins*, 297 Va. at 218. The suppression of evidence from an unconstitutional search is warranted only when such suppression serves to deter unconstitutional searches. *See id.* at 219. On remand in *Collins*, our Supreme Court held that the exclusionary rule did not apply "because, at the time of the search, a reasonably well-trained officer would not have known that the search of the motorcycle, located a few feet across the curtilage boundary of a private driveway, was unconstitutional." *Id.* at 212.

As in *Collins*, a reasonably well-trained officer would not have had reason to know that the warrantless search of the car on Richardson's private driveway in his home's curtilage was unconstitutional despite the existence of probable cause to believe that vehicle search would yield evidence of a crime. Officers Baker and Quindara both testified that they detected the odor of marijuana coming from the Richardsons' car. Based on this distinctive localized odor, the

---

[6] "As an appellate court, we seek 'the best and narrowest ground available' for our decision." *Castillo v. Commonwealth*, 70 Va. App. 394, 429 n.12 (2019) (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 285 n.2 (2015)). In accordance with this principle, "an appellate court may structure a decision upon an 'assuming but not deciding' basis," *Luginbyhl v. Commonwealth*, 48 Va. App. 58, 64 (2006), as this Court does here.

officers had probable cause to believe that the car contained marijuana.[7] *See Bunch v.*

*Commonwealth*, 51 Va. App. 491, 496 (2008) ("Under the Fourth Amendment, 'probable cause

may be supported by the detection of distinctive odors . . . .'" (quoting *United States v. Haynie*,

637 F.2d 227, 234 (4th Cir. 1980))). When this probable cause arose in May 2017, the officers

had reason to believe that the warrantless search was justified under the Fourth Amendment's

automobile exception. At the time of the vehicle search here, as in *Collins*, "no binding

precedent had held that the automobile exception was inapplicable to a vehicle parked in a

private driveway located close enough to a home to be considered within the curtilage." 297 Va.

at 220. Also, prior to the United States Supreme Court's opinion in *Collins* in 2018, the holding

in *Scher v. United States*, 305 U.S. 251 (1938), was commonly understood as applying the

automobile exception to authorize officers to follow a vehicle into an open garage within the

curtilage to search the vehicle. *See Collins*, 297 Va. at 220-25. Additionally, at the time of the

search here, the applicable caselaw applied the automobile exception to driveways without

consideration of the curtilage boundary. *Id.* at 225-26 (citing cases).[8]

---

[7] Effective March 1, 2021, Virginia law-enforcement officers may not lawfully stop, search, or seize any person, place, or thing solely on the basis of the odor of marijuana, and "no evidence discovered or obtained pursuant to a violation of this subsection, including evidence discovered or obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding." Code § 18.2-250.1(F) (repealed 2021). In a single piece of legislation, the General Assembly repealed Code § 18.2-250.1 and recodified the provisions of subdivision (F), as amended, at Code § 4.1-1302(A). *See* 2021 Va. Acts Spec. Sess. I, chs. 550-51, cls. 1, 3, 8. "[W]here a statute is repealed, and all or some of its provisions are at the same time re-enacted, the re-enactment neutralizes the repeal, and the provisions . . . thus re-enacted continue in force without interruption . . . ." *Street v. Commonwealth*, 75 Va. App. 298, 305 n.3 (2022) (quoting *Moore v. Commonwealth*, 155 Va. 1, 10 (1930)).

[8] It is unnecessary to consider whether the contested vehicle search here was justified under other exceptions to the warrant requirement because, under *Collins*, 297 Va. at 220-27, it was objectively reasonable for police officers to rely on the Fourth Amendment's automobile exception to search Richardson's car on the driveway in his home's curtilage.

Applying the holding in *Collins*, to the facts here, this Court concludes that even if the warrantless search of Richardson's car violated the Fourth Amendment, this constitutional violation would not warrant the application of the exclusionary rule. Given the state of the law at the time Officer Baker re-approached and searched Richardson's car in the curtilage of his home, a reasonably well-trained officer would not have known that the automobile exception was inapplicable and that the warrantless search was unconstitutional considering all the circumstances. Therefore, the good faith exception to the exclusionary rule applies here. Thus, the trial court did not err in denying Richardson's motion to suppress.

III. SUFFICIENCY OF THE EVIDENCE

Richardson argues on appeal that the evidence is insufficient to support his conviction for possession of a firearm as a convicted felon, in violation of Code § 18.2-308.2. Specifically, Richardson contends that the evidence failed to prove that he constructively possessed the firearms found inside a gym bag in a car he shared with his wife.

When reviewing the sufficiency of the evidence to support a criminal conviction, this Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Pooler v. Commonwealth*, 71 Va. App. 214, 218 (2019) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*)). We "discard the evidence of the accused *in conflict* with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (emphasis added) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). The conviction will be affirmed

- 11 -

"unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021) (quoting *Austin v. Commonwealth*, 60 Va. App. 60, 65 (2012)).

Taking the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to permit a rational fact-finder to find that Richardson possessed the firearms that were found in his car. The firearms were found in a gym bag on the driver's seat of the car moments after the police saw Richardson standing alone next to the car's open driver's door. Mrs. Richardson told the police that she saw Richardson bring the gym bag out of the house and that she did not know what was inside the bag. Before the police arrived, Richardson threatened to "blow his brains out," indicating that he had access to a firearm. The firearms were found in the gym bag beneath male clothing consistent with Richardson's size. After Richardson initially denied to the police that the gym bag and firearms were his, Richardson acknowledged that the gym bag contained his clothing and two firearms. Based on the totality of the evidence, the trial court did not err in finding the evidence sufficient to support Richardson's firearm conviction.

## IV. CONCLUSION

The trial court did not err in denying Richardson's motion to suppress and in finding the evidence sufficient to support his conviction for possession of a firearm as a convicted felon. Therefore, this Court affirms the trial court's judgment.

*Affirmed*.